IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | 1:22CR372-1 |
| JOSEPH KENNETH NEWBOLD, | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND ORDER RE DEFENDANT'S PRETRIAL MOTIONS

LORETTA C. BIGGS, District Judge.

Defendant Joseph Kenneth Newbold is presently charged in a four-count Indictment, charging him in Count One with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (possession with intent to distribute methamphetamine); in Count Two with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (possession with intent to distribute fentanyl); in Count Three with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (possession with intent to distribute cocaine hydrochloride); and in Count Four with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (possession with intent to distribute heroin). (ECF No. 1.)

Before the Court are four motions filed by Defendant, proceeding pro se.[1] The motions are: a motion to dismiss the indictment, (ECF No. 18); a motion for a *Franks* hearing,

---

[1] At the time Defendant filed these motions, he was represented by counsel who declined to adopt the motions. Defendant then elected to represent himself in this action. Defendant's former counsel by mutual consent was appointed as stand-by counsel. (*See* Minute Entry 03/07/2023.)

(ECF No. 19); a motion to suppress a photograph, (ECF No. 20); and a motion to suppress all evidence seized as a result of the search warrant executed at 4960 Cecil Norman Road, (ECF No. 22).

The Court, having considered the filings of the parties and for the reasons stated herein, will deny all of Defendant's motions.

## I.  MOTION TO DISMISS THE INDICTMENT

In Defendant's first motion, he asks this Court to dismiss the indictment against him because the Government has violated the Double Jeopardy Clause. (ECF No. 18 at 4–11.) According to the Defendant, this is a selective prosecution undertaken with an unconstitutional motive, (*id.* at 12–17), and it is fundamentally unfair that the Government is prosecuting him, (*id.* at 17–20). The Court will deny this motion for the reasons that follow.

### A.  This Prosecution Does Not Implicate the Double Jeopardy Clause

According to Defendant, the present federal indictment places him in double jeopardy because the State of North Carolina previously prosecuted him for possessing the same illegal drugs and as a result of that prosecution levied an unauthorized substance tax against him. (*Id.* at 2); *see* N.C. Gen. Stat. § 105-113.105 *et seq.* Defendant claims that this tax was a criminal penalty that triggered the protections of the Double Jeopardy Clause under *Lynn v. West*, 134 F.3d 582 (4th Cir. 1998). (*Id.*) Defendant acknowledges that the dual sovereignty doctrine would normally allow the United States to prosecute a defendant for conduct that the State of North Carolina already prosecuted him for, but Defendant argues that the doctrine does not apply here because the State of North Carolina "manipulated" the United States into indicting him in a "sham federal prosecution" for the purpose of circumventing the Double Jeopardy Clause. (*Id.* at 1.)

2

The Court finds that Defendant's argument is not persuasive. Under the dual sovereignty doctrine, "a subsequent prosecution by a different sovereign plainly does not constitute double jeopardy." *In re Kunstler*, 914 F.2d 505, 517 (4th Cir. 1990). Thus, the United States is free to bring the present charges against Defendant regardless of what charges the State of North Carolina has pursued.

Moreover, although there is a "'tool of the same authorities' exception" to the dual sovereignty doctrine that "is possible in some circumstances" if it is "established by proof that [the] officials [of the second sovereign] had little or no independent volition in their proceedings," *id.*, that exception cannot apply here. The North Carolina General Assembly has amended the state's drug tax law significantly since the Fourth Circuit decided *Lynn*. *See Nivens v. Gilchrist*, 319 F.3d 151, 157–58 & n.8 (4th Cir. 2003). In 2003, the Fourth Circuit explicitly "decline[d] to hold that North Carolina's post-amendments drug tax is sufficiently similar to the pre 1995 . . . drug tax [that was considered in *Lynn*] such that [a court] should treat them the same," and has therefore cautioned that "*Lynn* . . . [is] not controlling" on whether the current North Carolina drug tax is a criminal penalty. *Id.* at 158. After the Fourth Circuit distinguished *Lynn* on that basis, a court in this district extensively analyzed the post-amendment version of North Carolina's drug tax law and concluded that "the North Carolina drug tax is not a criminal punishment, but rather serves as a civil penalty." *Hough v. Mozingo*, No. 04-CV-609, 2005 WL 1168462, at *6–8 (M.D.N.C. Apr. 29, 2005), *report and recommendation adopted*, No. 04-CV-609, 2005 WL 2216877 (M.D.N.C. Sept. 12, 2005). Around the same time, the North Carolina Supreme Court reached the same conclusion. *N.C. School Bds. Ass'n v. Moore*, 614 S.E.2d 504, 516 (N.C. 2005). Based on this authority, this Court concludes that the drug tax levied against Defendant was not a criminal penalty and therefore does not preclude

*any* criminal prosecution pursuant to the Double Jeopardy Clause, whether brought by the State of North Carolina or the United States as a separate sovereign.

### B.  Defendant Has Not Shown that This is a Selective Prosecution

Defendant also claims that he has been selected for prosecution to prevent him from exercising his constitutional rights to be free from double jeopardy, unreasonable searches, and excessive bail. (ECF No. 18 at 12.) Defendant contends that the State of North Carolina realized after arresting Defendant that its search warrants lacked probable cause and thus it could not use evidence seized based on the warrants and would not be able to obtain a conviction; therefore, it tricked Defendant into waiving his state right to a probable cause hearing by offering him a low bail, then levied the previously discussed drug tax, dismissed the case, and then manipulated the United States into bringing federal charges (thereby—according to Defendant—depriving Defendant of the low bail he had negotiated for, avoiding North Carolina law regarding unreasonable searches, and allowing the State to prosecute him twice for the same offense). (*See id.* at 2–4; *see also id.* at 8 ("State prosecutors then orchestrated a federal indictment, turning over their evidence to a federal grand jury and asking the [United States] to adopt the case to defeat [Defendant's] assertion of double jeopardy rights and because they were not sure their evidence could withstand a motion for acquittal under [North Carolina] appellate precedents.").) Defendant additionally claims that the instant federal prosecution violates his right to a trial by a jury of his peers because, according to Defendant, the jury pool in Randolph County has a higher proportion of white jurors than the jury pool in the Middle District of North Carolina. (*Id.* at 12, 16–17.)

"A selective prosecution claim is an 'assertion that the prosecutor had brought the charge for reasons forbidden by the Constitution." *United States v. Venable*, 666 F.3d 893, 900
4

(4th Cir. 2012) (quoting *United States v. Armstrong*, 517 U.S. 456, 463 (1996)). "The government ordinarily has wide latitude in deciding whether to prosecute." *Id.* "However, equal protection forbids basing the decision 'on an unjustifiable standard such as race, religion or other arbitrary classification." *Id.* (quoting *Armstrong*, 517 at 464). "'In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary,' demonstrating that the government was motivated by a discriminatory purpose to adopt a prosecutorial policy with a discriminatory effect." *Id.* (quoting *Armstrong*, 517 at 465). "Because discovery imposes high costs on the government, the standard for obtaining discovery in support of a selective prosecution claim is only slightly lower than for a dismissal of the indictment; rather than presenting clear evidence, the 'defendant must produce "some evidence" making a "credible showing" of both discriminatory effect and discriminatory intent.'" *Id.* (quoting *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996)).

Here, Defendant has not cited any evidence whatsoever to support his selective prosecution claims. (ECF No. 18 at 12–17.) Moreover, Defendant's contentions all focus on how the State of North Carolina allegedly had an unconstitutional motive in prosecuting him. However, the present indictment was brought by the United States. Accordingly, the Court finds that Defendant has not carried his burden of showing he was subjected to a selective prosecution, nor has he presented evidence sufficient to warrant discovery.

  **C.**  **The Court Will Not Dismiss the Indictment as Unfair**

Finally, Defendant argues that this Court can and should dismiss the indictment in this case using its inherent supervisory powers because there have been violations of fundamental fairness. (ECF No. 18 at 17–20.) Defendant contends that the present prosecution is

5

fundamentally unfair because it violates the Double Jeopardy Clause and is a selective prosecution—even if it "do[es] not fit exactly within the ambit" of those doctrines. (*Id.* at 17.)

This argument is not persuasive. As this Court has determined, Defendant has not been subjected to double jeopardy, nor is he being subjected to selective prosecution. He cannot fail to show a constitutional violation as he has done here and then obtain his desired relief as though his constitutional challenge had been established. If a lesser showing were enough to obtain a dismissal of the indictment, then the doctrines would allow for a lesser showing. They do not. The Court will therefore deny Defendant's motion to dismiss the indictment.

## II. MOTION FOR A *FRANKS* HEARING

"In *Franks v. Delaware*[, 438 U.S. 154 (1978),] the Supreme Court carved out a narrow exception to the general rule prohibiting a defendant from attacking a facially valid affidavit." *United States v. White*, 850 F.3d 667, 672–73 (4th Cir. 2017). "To obtain a *Franks* hearing, a defendant must make 'a substantial preliminary showing' that the affiant made (1) a false statement (2) 'knowingly and intentionally, or with reckless disregard for the truth' that was (3) 'necessary to the finding of probable cause.'" *Id.* (quoting *Franks*, 438 U.S. at 155–56).

Here, Defendant contends that the detective who submitted the affidavit that supported the search warrant for Defendant's property described two controlled buys using false or misleading statements. (ECF No. 19 at 2–3.) The affidavit used substantially the same language to describe each controlled buy. (*See* ECF No. 25-1 at 7.) In relevant part, the affidavit reads:

> Before the controlled purchase the CRS was briefed and searched. While searching the CRS no items of contraband were located. After the CRS was searched, the CRS left the brief location and traveled directly to 4960 Cecil Norman Rd. Detectives surveilled the CRS. During the surveillance Detectives

6

observed [Defendant] arrive at the residence driving the silver in color Kia Soul that is registered to him through the NCDMV. After a short time, the CRS left 4960 Cecil Norman Rd. and traveled directly to the predetermined debrief location. Detectives surveilled the CRS. When the CRS arrived at the debrief location, the CRS turned over the methamphetamine . . . .

(ECF No. 25-1 at 7.)[2]

Defendant has specifically identified four statements in the two descriptions of the controlled buys that he claims were false or misleading, specifically: (1) that "[the affiant] utilized the CRS to buy meth from [Defendant] at 4960 Cecil Norman Road"; (2) that "[t]he CRS left the brief location and traveled directly to 4960 Cecil Norman Road"; (3) that "[a]fter a short time the CRS left 4960 Cecil Normal Road and traveled directly to the predetermined brief location"; and (4) that "[d]etectives observed [Defendant] arrive at the residence driving [a] silver KIA Soul."[3] (ECF No. 19 at 2–3.) Defendant's core contention why these statements are false is that the officer who submitted the affidavit had been positioned during the controlled buy on a nearby street and had been at such a distance from Defendant's property and at such an angle that he could not have seen the CRS arrive at Defendant's property, could not have seen any drug transaction, could not have seen the CRS leave Defendant's property, and could not even have seen Defendant's KIA Soul. (ECF No. 19 at 3–5.) Defendant asserts

---

[2] The second description differs from the first only in that the second does not mention the Kia Soul. (ECF No. 25-1 at 7.)

[3] Defendant has also argued that the affidavit misleadingly omitted various facts about the CRS's criminal history and the agreement they had with police to have a case against them dismissed if they made controlled buys. (ECF No. 19 at 6–7.) Defendant has not offered any evidence whatsoever to support his allegations regarding the CRS, (*see id.*), and the Court therefore does not consider them. The Court likewise does not consider Defendant's contention that some statements in the affidavit were misleadingly phrased to appear based on personal knowledge when they were instead based on hearsay, as Defendant has not presented any evidence that the affiant lacked personal knowledge of these matters. (*Id.* at 7–10.)

7

that he can prove his contention using testimony the officer gave at Defendant's bond hearing, as well as "maps and videos" of his property and the surrounding area. (ECF No. 19 at 2.)

The Court finds that Defendant's evidence is insufficient to make the substantial preliminary showing necessary to allow a *Franks* hearing.

Starting with the officer's testimony from the bond hearing, Defendant cites only one portion of that testimony to support his motion. (ECF No. 19 at 3.) In relevant part, that portion reads:

> Q. [W]ere the officers, yourself, able to get close to the residence other than this one example you said where some of the officers were in the woods?
>
> **A.     We were, yes.**
>
> Q. Could you observe the confidential source actually come up to the house?
>
> A. Not the physical house itself, due to his property, he has a long driveway. He lives at the end of it. There is one other house on that driveway . . . [t]hat is prior to [Defendant's] residence on that driveway. Unless the detectives were in the wooded area, they could only witness the confidential source turn on the driveway. The detectives that were conducting surveillance were in the woods for other controlled purchases, however, they only witnessed [Defendant] go to the wooded area that one time.

(ECF No. 19-2 at 11:18–12:8.) Defendant characterizes this testimony as an "admi[ssion] [that the] surveillance detectives could not see the CRS arrive at 4960 Cecil Normal Road." (ECF No. 19 at 3.) The Court disagrees with that characterization. The detective was asked if there was surveillance of Defendant's property aside from surveillance conducted by officers in the woods, and the detective answered yes, and then explained that "[u]nless the detectives were in the wooded area" their view was obstructed. The officer then testified that there were detectives in the wooded area during the controlled buys. Nothing about this testimony suggests that the challenged statements in the affidavit were false or misleading.

8

As for the "maps and videos" of Defendant's property, the map that Defendant has submitted in support of his motion is of such poor quality that the Court is unable to read it, (ECF No. 19-3), and the Defendant has apparently not submitted his videos, (ECF No. 19-4 (slipsheet for an unfiled exhibit)). However, even if Defendant had properly submitted this evidence, it would not help his motion. As described in the bond hearing testimony, the relevant surveillance of the controlled buy was conducted by detectives in the woods around Defendant's property, not solely by a detective down the road from the property. (ECF No. 19-2 at 11:22–12:8.) Thus, evidence about what can or cannot be seen from the roads around Defendant's house would not prove that the challenged statements are false or misleading.

Accordingly, Defendant has not made, nor can he make based on his proffered evidence, a preliminary showing, much less a "substantial preliminary showing," that the affidavit that supported the search warrant in this case contained any false or misleading statement. As recognized by the Fourth Circuit, Defendant's burden before a *Franks* hearing can take place is a heavy one, and Defendant has failed to meet that burden here. *See United States v. Tate*, 524 F.3d 449, 454 (4th Cir. 2008). The Court will therefore deny Defendant's motion for a *Franks* hearing.

### III. MOTION TO SUPPRESS PHOTOGRAPH

Defendant also moves to suppress photographs that he alleges were obtained in violation of his due process rights and amounted to an "unreasonable photographic seizure of his person." (ECF No. 20 at 1.)

The facts relevant to this motion are not at issue. Detective Sakamura was conducting surveillance in the wooded area belonging to Newbold around his house. Detective Sakamura saw Newbold enter the woods, move around rocks, leaves, and dirt, then remove a jar and

9

plastic bag containing a white crystal substance. Detective Sakamura took a photograph of Newbold bent over the plastic bag. (ECF Nos. 20 at 2–3; 34 at 4–5.)

The open fields surveillance by Detective Sakamura and resulting photograph is squarely within the bounds of what is permitted by the Fourth Amendment. *Oliver v. United States*, 466 U.S. 170 (1984); *Katz v. United States*, 389 U.S. 347 (1967). Defendant appears to concede this and attempts to get around Fourth Amendment law by arguing that the photograph must be suppressed under Fifth Amendment. Specifically, Newbold contends that such evidence was obtained via an intentional and willful deprivation of his property rights without due process. (ECF No. 20 at 8.) Defendant concedes that there is no precedent supporting the suppression of evidence on a due process trespass claim. The Court likewise finds no precedent and concludes that this argument is meritless.

Defendant's motion to suppress the photographs taken on his property is therefore denied.

## IV. MOTION TO SUPPRESS EVIDENCE RESULTING FROM CECIL NORMAN ROAD WARRANT

Defendant moves to suppress all evidence seized by the Randolph County Sheriff's Office on May 10, 2022, as the "fruit of an unreasonable seizure in violation of the Fourth Amendment." (ECF No. 22 at 1.) Defendant makes several arguments, including that the execution of the search warrant was unreasonable; that the warrant itself was invalid; that the warrant was not supported by probable cause; that the seizure of items found in an open field was unreasonable; and that the *Leon* good-faith exception to the exclusionary rule does not apply. (*Id.* at 1–2.)

As laid out in both parties' briefing, the relevant facts are as follows:

10

On May 9, 2022, Detective Linthicum was sworn to his affidavit before Randolph County Magistrate Tosha Green. Magistrate Green granted a search warrant for Defendant's Cecil Norman Road address.

On May 10, 2022, deputies saw Defendant leave his house by car and subsequently pulled him over. They asked Newbold to step out and handcuffed him. Another detective frisked Defendant and found a glass pipe and a clear bag containing suspected methamphetamine.

The deputies brought Newbold back to his house for the execution of the search warrant. The parties dispute whether Detective Linthicum ever read the search warrant aloud and provided Defendant a copy.

Once inside the house, deputies found a digital scale and plastic baggies in a dresser in Newbold's bedroom, three rounds of ammunition in the closet in Newbold's bedroom, and a digital scale in a kitchen drawer.

In the woods surrounding the house, an area that Defendant concedes was "outside the curtilage," (ECF No. 22 at 3), detectives found various types of containers hidden in fallen trees and mounds of dirt. The containers held various suspected narcotics. Detectives found narcotics both on Newbold's land and on two of his neighbor's properties. Deputies found 1922.1 grams of methamphetamine total, 315.5 grams of heroin total, 74.8 grams cocaine, 338 grams of marihuana, and 10.3 grams psilocybin mushrooms. (ECF Nos. 22 at 2–4; 34 at 3–7.)

As an initial matter, the Court finds that the search warrant was supported by probable cause and was sufficiently particular. Supporting the warrant is Detective Linthicum's affidavit which outlines several facts easily satisfying the probable cause standard. These include but

11

Case 1:22-cr-00372-UA   Document 37   Filed 03/22/23   Page 11 of 14

are not limited to Detective Linthicum's representations that he interviewed a confidential reliable source ("CRS") who reported purchasing methamphetamine from Defendant, that he coordinated controlled purchases between the CRS and Defendant, that he researched Newbold's criminal history, and that detectives conducted surveillance of the CRS during the controlled purchases with Defendant. Further, the ten-page warrant particularly describes the places to be searched and the things to be seized. (ECF No. 26-1.)

Defendant makes various arguments under North Carolina statutes, such as alleging that officers failed to produce a copy of the warrant, read the warrant, and that the magistrate's signature was illegible. However, "the Fourth Amendment, not federal rules or state law, governs the admissibility of evidence obtained by state officers but ultimately used in a federal prosecution." *United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994). These state statutory arguments are without merit in this federal prosecution where the Fourth Amendment imposes no similar requirements.

Defendant also argues that the search and seizure of the containers from the open fields around his house were unsupported by the warrant and unreasonable. This argument is wholly meritless. First, the warrant itself covered the entire address of 4960 Cecil Norman Road. (ECF No. 26-1.) The description of places to be searched specifically includes: "any above ground or below ground storage containers," as well as an aerial photograph of the tract of land. (*Id.* at 3, 10.)

Second, even without a warrant, Supreme Court doctrine squarely permits the search and seizure of stray, unlocked containers (like the coffee cans and pickle jars here) found in the undeveloped woods behind Newbold's house. The Court finds *California v. Greenwood*, 486 U.S. 35 (1988) instructive. There, the Supreme Court found that the Fourth Amendment does

12

not prohibit the warrantless search or seizure of garbage left for collection outside the curtilage of a home. 486 U.S at 39–40 ("It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public."); *see also United States v. Ramapuran*, 632 F.2d 1149, 1156 (4th Cir. 1980) (holding that the defendant had no privacy interest inside the trunk of an old car in an "open field"). "[O]pen fields do not provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance." *United States v. Vankesteren*, 553 F.3d 286, 291 (4th Cir. 2009) (quoting *Oliver v. United States*, 466 U.S. 170 (1984)).

In sum, the Court finds that the evidence at issue was all obtained as a result of the lawful execution of the search warrant at the Cecil Norman Road address.[4] None of Defendant's arguments have merit, and the Court must therefore deny Defendant's motion to suppress. Further, because the Court finds no "contested issues of fact going to the validity of the search are in question," it declines to hold a hearing on Defendant's motions to suppress. *See United States v. Griffin*, 811 F. App'x 815, 816 (4th Cir. 2020) ("[A]n evidentiary hearing is not always required to resolve a motion to suppress. . . . [A] hearing is required only if the motion to suppress is 'sufficiently definite, specific, detailed, and non-conjectural' to enable a district court to conclude that contested issues of fact going to the validity of the search are in question." (quoting *United States v. Unimex, Inc.*, 991 F.2d 546, 551 (9th Cir. 1993))).

For the reasons stated herein, the Court enters the following:

---

[4] Given that the Court finds no credible argument for any Fourth Amendment violation, the Court need not address any good-faith exception to the exclusionary rule under *United States v. Leon*, 468 U.S. 897, 922 (1984).

13

**ORDER**

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss the Indictment, (ECF No. 18), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for a *Franks* Hearing, (ECF No. 19), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress, (ECF No. 20), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress All Evidence Seized as a result of the search warrant executed at 4960 Cecil Norman Road, (ECF No. 22), is **DENIED**.

This, the 21st day of March 2023.

/s/ Loretta C. Biggs
United States District Judge