IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22CR372-1 |
| | ) | |
| JOSEPH KENNETH NEWBOLD, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER RE DEFENDANT'S PRETRIAL MOTIONS

LORETTA C. BIGGS, District Judge.

Defendant Joseph Kenneth Newbold is presently charged in a four-count Indictment, charging him in Count One with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (possession with intent to distribute methamphetamine); in Count Two with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (possession with intent to distribute fentanyl); in Count Three with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (possession with intent to distribute cocaine hydrochloride); and in Count Four with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (possession with intent to distribute heroin). (ECF No. 1.)

Before the Court are four motions filed by Defendant, proceeding pro se. These motions are: Defendant's motion for reconsideration of his motion for a *Franks* Hearing, (ECF No. 41); Defendant's motion for reconsideration of the Court's order denying his motion to suppress evidence obtained as a result of the search warrant at 4960 Cecil Norman Road, (ECF No. 43); Defendant's motion to dismiss or merge multiplicitous counts and to

dismiss Count Four of the Indictment, (ECF No. 48); and Defendant's motion to continue his trial to the June 2023 term, (ECF No. 50).

The Court, for the reasons stated herein, will deny Defendant's motion for reconsideration of his motion for a *Franks* Hearing, (ECF No. 41); will deny Defendant's motion for reconsideration of the Court's order denying his motion to suppress evidence obtained as a result of the search warrant at 4960 Cecil Norman Road, (ECF No. 43); will deny Defendant's motion to dismiss or merge multiplicitous counts and to dismiss Count Four of the Indictment, (ECF No. 48); and will deny Defendant's motion to continue his trial to the June 2023 term, (ECF No. 50).

## I. MOTIONS TO RECONSIDER

"Although 'the Federal Rules of Criminal Procedure do not specifically provide for motions for reconsideration,' . . . the Fourth Circuit has acknowledged that, in certain circumstances such as rehearing of orders in criminal proceedings, district courts have the inherent authority to decide motions for reconsideration." *United States v. Smith*, No. 16-CR-34-FL-1, 2017 WL 4685357, at *1 (E.D.N.C. Oct. 18, 2017) (internal citations omitted). "In addressing such motions, courts, by analogy, are guided by the standards established by the civil rules, that '[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. . . . Motions to reconsider are not proper where the motion merely asks the court to rethink what the Court had already thought through rightly or wrongly.'" *Id.* (quoting *DIRECTV, INC. v. Hart*, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004)).

## A. *FRANKS* HEARING (ECF No. 41)

In Defendant's motion for reconsideration of his motion for a *Franks* hearing, (ECF No. 41), he argues that the Court's prior ruling is "based on manifest errors of both law and fact" and "the Court's failure to consider material video evidence," (ECF No. 41 at 5), that the Court misapprehended the nature of the false statements [in *Franks*]," makes "unwarranted inference[s]," and fails to address misleading omissions about surveillance of the [controlled] buys," (*id.*), and last that the Court overstated the applicable standard of proof, (*id.* at 5–6). Defendant urges the Court to grant a hearing to consider "newly available video evidence and order the Government to produce the reports of controlled buy surveillance [that Defendant maintains is] being suppressed in violation of *Brady*, *Giglio*, and *Youngblood v. West Virginia*." (*Id.* at 6.)

First, the Court reiterates its analysis and findings in its previous opinion and order denying Defendant's motion for a *Franks* hearing. (*See* ECF No. 37.) The Court stands by that order and finds that Defendant has not made a substantial preliminary showing that the search warrant contained false statements or misleading omissions. (*Id.* at 8.)

With regard to issues of law in the Court's previous order, Defendant argues that this Court misapprehends the *Franks* case itself and that the officer's statements in the affidavit here are false "in exactly the same way as the affiant's statement in *Franks*." (ECF No. 41 at 8–9.) The Court disagrees.

In *Franks v. Delaware*, the Supreme Court made clear that only where there is proof that the affiant lied or acted with a "reckless disregard for the truth" with respect to some material statement in an affidavit will a hearing be required. 438 U.S. at 171. There, part of the probable cause for the search warrant was a statement in the affidavit that the detective-affiants

3

contacted the defendant's employers, who stated that the defendant's normal dress consisted of a "white knit thermal undershirt and a brown leather jacket," as well as a "dark green knit hat." *Id.* at 157. That description matched one given by the victim, and a warrant was subsequently issued. *Id.* In arguing for an evidentiary hearing, the defendant contended that his employers "would testify that neither had been personally interviewed by the warrant affiants," showing that the misstatements in the affidavit were not inadvertent, but in "bad faith." *Id.*

Here, Defendant contends three statements in the affidavit "were false or made with reckless disregard of the truth": (1) "that affiant utilized the CRS to buy meth from [Defendant] at 4960 Cecil Norman Road"; (2) that "the CRS left the brief location and traveled directly to 4960 Cecil Norman Road"; and (3) that "the CRS left 4960 Cecil Normal Road and traveled directly to the brief location." (ECF No. 41 at 7.) As Defendant already argued in his original motion, his main contention why these statements are false is that the officer who submitted the affidavit had been positioned during the controlled buy at such a distance and angle from Defendant's property that he could not possibly have seen the CRS arrive at Defendant's property, could not have seen any drug transaction, and could not have seen the CRS leave Defendant's property. (*Id.* at 7.) Defendant further contends that these statements are false because "[the affiant] would be claiming personal knowledge of facts he actually obtained from other deputies as hearsay." (*Id.*)

The Court does not find these statements by the officer at all like the statements warranting a hearing in *Franks*. The detective in *Franks* explicitly stated he personally had contacted the defendant's employers and "did have personal conversation with [them]," and the defendant argued the employers "would testify that neither had been personally

4

interviewed by the warrant affiants. 438 U.S. at 157. Here, Defendant makes no equivalent argument showing any deliberate falsehood. Even if the officer's statements here may have been made in part based on representations of other officers involved in the same controlled buy, that alone is not enough to show falsity or reckless disregard of the truth.

Defendant rather argues the falsehood here is that the officer-affiant represented that such observations were based on personal knowledge but, in reality, were based on hearsay. (ECF No. 41 at 8–9.) First, the Court notes the affidavit is written in broad language suggesting reliance on a combination of personal knowledge, information from other officers involved in the investigation, and information from the CRS. (*See* ECF No. 25-1 at 7.) Second, Defendant contorts *Frank*'s ultimate holding. The Supreme Court in *Franks* recognized that "probable cause may be founded upon hearsay and upon information received from informants." 438 U.S. at 165. An officer making an affidavit for issuance of a search warrant may do so in reliance upon information reported to other officers in the performance of their duties.[1]

Further, notwithstanding the specific statements that Defendant challenges here, the Court adds that the affidavit appears to contain ample support for probable cause. The officer who submitted the affidavit was involved in arranging *multiple* controlled buys with a CRS and Defendant. (ECF No. 25-1 at 7.) The officer states that he personally interviewed the CRS who made multiple transactions with Defendant, and the officer details that CRS's reliability.

---

[1] *See, e.g., United States v. Kirk*, 781 F.2d 1498, 1505 (11th Cir. 1986) ("Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number. To comply with the requirement of particularity and to enable the magistrate to make an independent probable cause evaluation, however, the agent must state in the affidavit that he is relying upon other officers. We caution that this requirement should not be viewed in a hypertechnical, rather than a common-sense, manner. It is sufficient if the affidavit recites at the outset, or if it is clear from reading the affidavit as a whole, that it is based in part upon information obtained from other law enforcement officers." (internal quotations and citations omitted).)

5

(*Id.* at 7–8.) Whether or not the affiant-officer saw with his own eyes Defendant's car arrive or the transaction itself on that single occasion is of little import. Courts have been clear that "[w]hen an informant has proven to be reliable in the past and has firsthand knowledge of the criminal activity in question, probable cause exists for issuing a search warrant." *United States v. Canady*, 142 F. App'x 133, 135 (4th Cir. 2005). Here, the affidavit stated that the CRS had made previous purchases of controlled substances, followed the officers' instructions, and "never deviated from them," as well as provided information that was corroborated and found to be truthful. (ECF No. 25-1 at 8.)

To the extent that Defendant seeks to use the Fourth Circuit's decision in *United States v. Tate*, 524 F.3d 449 (4th Cir. 2008) to bolster his arguments, the Court is equally unpersuaded. In *Tate*, the Fourth Circuit contemplated whether defendant had made the "substantial preliminary showing" required by *Franks* after defendant asserted that the officer's affidavit in support of a search warrant deliberately omitted facts about the location of the trash that the affiant searched. 524 F.3d at 451. The defendant submitted evidence contradicting the affiant's claim that the trash bags "were easily accessible from the rear yard," arguing that "the facts omitted were that [the officer] trespassed to obtain [defendant's] trash and seized the trash when it had not been abandoned." *Id.* at 453. Specifically, defendant offered evidence showing that the officer would have had to jump a fence which enclosed the defendant's backyard, trespass on the property, and search trash that was stored in a container that had not been abandoned for pick-up. *Id.* at 455. The Fourth Circuit noted that "[w]ithout the facts drawn from the trash investigation, the remaining contents of the affidavit would not have supported a finding of probable cause," and held that defendant had made a substantial preliminary showing warranting a *Franks* hearing. *Id.* at 457.

6

Defendant contends his situation is similar to *Tate* because the affiant-officer knew that "visual observation of [the] CRS during a buy entering Newbold's house was essential to establish probable cause, and his omission of such a statement . . . was intended to mislead about the fact that no one saw the CRS enter Newbold's residence." (ECF No. 41 at 10–11.) Apart from not finding any of the officer-affiant's statements here false or misleading, the Court also notes that whether the CRS was literally observed entering Defendant's house was not essential to the probable cause finding. Ample support existed in the affidavit linking drug transactions to Defendant and his residence.

Defendant last takes issue with how the Court applied the standard applicable to his *Franks* hearing motion. As the Court stated previously, (ECF No. 37 at 6), to obtain a *Franks* hearing, "a defendant must make 'a substantial preliminary showing' that the affiant made (1) a false statement (2) 'knowingly and intentionally, or with reckless disregard for the truth' that was (3) 'necessary to the finding of probable cause.'" *United States v. White*, 850 F.3d 667, 672–73 (4th Cir. 2017) (quoting *Franks*, 438 U.S. at 155–56). "Given the 'presumption of validity with respect to the affidavit supporting the search warrant,' . . . a defendant must satisfy this 'heavy' burden before a hearing takes place." *United States v. Moody*, 931 F.3d 366, 370 (4th Cir. 2019) (quoting *Franks*, 438 U.S. at 171). The Court applied that standard and found Defendant's evidence, which mainly consisted of the officer's testimony at Defendant's bond hearing, "insufficient to make the substantial preliminary showing necessary to allow a *Franks* hearing." (ECF No. 37 at 8.)

As to the presentation of newly discovered evidence that might warrant reconsideration, Defendant points to a video that his standby counsel made which allegedly shows that detectives could not see Defendant's house. (ECF No. 41 at 4–5.) The exhibit the

7

Court finds attached to Defendant's motion purporting to be this video is ECF No. 41-7, labeled Exhibits G-H. (*See* ECF No. 41-7.) However, from what the Court can tell, this exhibit is solely a scan showing an image of a CD (which allegedly has the video on it) but not the actual video. However, notwithstanding any video evidence, as the Court stated in its original denial of Defendant's motion, any video "evidence about what can or cannot be seen from the roads around Defendant's house [does] not prove that the challenged statements are false or misleading." (ECF No. 37 at 9.) Thus, even if the video shows what Defendant claims it does, it would not rise to the level of a substantial preliminary showing necessary for a *Franks* hearing.

In sum, Defendant has not shown any manifest error of law or fact warranting reconsideration. Defendant merely asks the Court to rethink what it has already thought through, whether rightly or wrongly. Accordingly, Defendant's motion for reconsideration is denied.

### B. MOTION TO SUPPRESS (ECF No. 43)

In Defendant's motion for reconsideration of his motion to suppress, (ECF No. 43), he makes approximately a dozen arguments, almost all of which this Court previously rejected and need not re-analyze given the applicable standard of review. The Court will address each in turn.

#### 1. The Warrant Allowed Officers to Stop Defendant Four Miles from His Residence

Defendant first argues that he was subjected to an unreasonable seizure of his person in violation of the Fourth Amendment because he was four miles away from his home when officers stopped him. (ECF No. 43 at 4–5.) The Court did not explain why this contention is meritless in its prior opinion because Defendant did not clearly present it as an independent

8

argument in his original motion. (*See* ECF No. 22 at 7.) At the motions hearing on May 3, 2023, Defendant specifically requested that the Court address this argument. Accordingly, the Court will set out here why it finds that the four-mile distance between Defendant's home and the place where he was stopped does not render the stop unconstitutional.

Defendant builds his argument on the premise that the facts of his case are identical to the facts of the Supreme Court case *Bailey v. United States*, 568 U.S. 186 (2013). (ECF No. 43 at 4.) However, the facts here are not at all like those in that case. In *Bailey*, officers with a warrant to search a residence saw unidentified persons leaving the residence and tailed them for about a mile before pulling them over. *Bailey*, 568 U.S. at 190. The Supreme Court explained that under *Michigan v. Summers*, 452 U.S. 692 (1981), although "officers executing a search warrant '[may] detain the occupants of the premises while a proper search is conducted'" even if they do not have particular suspicion that an individual is involved in criminal activity, "[t]he categorical authority to detain incident to the execution of a search warrant must be limited to the immediate vicinity of the premises to be searched." *Bailey*, 568 U.S. at 193–94, 199 (quoting *Summers*, 452 U.S. at 705). Here, Defendant was not stopped because he happened to be near a premise being searched; instead, he was stopped because there was a search warrant for both his residence and his person. (ECF No. 26-1 at 1 ("You are commanded to search the . . . person . . . described in the application"), 3 ("Person(s) To Be Searched: Joseph Kenneth Newbold")). Thus, that officers stopped Defendant four miles from his residence is not a reason to suppress any evidence.

    2.    <u>The Court's Application of Federal Law to Defendant's N.C. Gen. Stat. § 15A-246 Argument Was Correct</u>

Defendant next argues that the Court erred when it rejected his argument that the search warrant was invalid for non-compliance with a name and signature requirement of N.C.

9

Gen. Stat. § 15A-246 because the Court evaluated this argument under federal rather than state law.[2] (ECF No. 43 at 5–8.) This Court did not commit any manifest error of law in its analysis.

In *United States v. Warren*, 17-CR-121, 2018 WL 6588508, at *5 (E.D.N.C. Aug. 23 2018), *report and recommendation adopted*, 17-CR-121, 2018 WL 6178447 (E.D.N.C. Nov. 27, 2018), *aff'd*, No. 20-4076, 2022 WL 72723 (4th Cir. Jan. 7, 2022) (unpublished), a defendant argued that evidence should be suppressed because the magistrate who issued the warrant to search his home had failed to sign the warrant as required by N.C. Gen. Stat. § 15A-246. The district court noted that "[w]hile [defendant] is correct that North Carolina's General Statutes require that a search warrant contain '[t]he name and signature of the issuing official,' a violation of state law is not the same as a violation of the Fourth Amendment." *Warren*, 2018 WL 6588508, at *5 (quoting N.C. Gen. Stat. § 15-246). The district court ultimately denied the defendant's motion to suppress. *Id.* at 7; *see also Warren*, 2018 WL 6178447 at *5–6. In the Fourth Circuit's unpublished opinion affirming the district court, the Fourth Circuit also evaluated the signature argument under federal Fourth Amendment law. *Warren*, 2022 WL 72723, at *3; *see also United States v. Lyons*, 740 F.3d 702, 724–25 n.9 (1st Cir. 2014) (addressing a warrant that lacked a magistrate's signature and noting that "compliance with state law is neither necessary nor sufficient for evidence's admission in federal court").

       3.    <u>The Court Will Not Re-Analyze Whether the Warrant Was Supported by Probable Cause</u>

Defendant next argues that the search warrant was "an overbroad general warrant" because it authorized a search "for currency, drug paraphernalia, electronic devices and paper

---

[2] N.C. Gen. Stat. § 15A-246 requires that "[a] search warrant must contain . . . [t]he name and signature of the issuing official with the time and date of issuance above his signature." Defendant argues that the search warrant in this case was invalid because, although the issuing magistrate signed it, it did not include the magistrate's "typed or printed name." (ECF No. 43 at 5.)

10

documents, firearms, weapon accessories, cell phones and 'any and all other items'" based on statements from the applying officer about drug dealers in general rather than Defendant in particular. (ECF No. 43 at 8–9.) Defendant made this same argument in his original Motion to Suppress, (ECF No. 22 at 22–25), and this Court rejected it, (ECF No. 37 at 11–12 ("As an initial matter, the Court finds that the search warrant was supported by probable cause and was sufficiently particular.")). Defendant's present contention is no more than a request that this Court rethink its prior decision. Because such a request is not appropriate on a motion to reconsider, this Court will not entertain it. *DIRECTV*, 366 F. Supp. 2d at 317 ("Motions to reconsider are not proper where the motion merely asks the court 'to rethink what the Court has already thought through—rightly or wrongly.'" (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).

4. A Finding That Defendant's Woods Were Not "Curtilage" Would Not Affect this Court's Prior Ruling

Defendant also argues that this Court erred in its prior opinion when it determined that officers' search of his woods and their seizure of containers found in those woods fell within the scope of the warrant. (ECF No. 43 at 15–17.) However, even if the Court erred in determining the scope of the warrant in this case, that would not be a reason to disturb this Court's prior ruling on Defendant's motion because the Court in its prior opinion gave an alternative ground (specifically, the open fields doctrine) to uphold the search and seizure of the buried containers of drugs. (ECF No. 37 at 12–13.)

That said, because Defendant specifically requested at the motions hearing that the Court address the scope of the search warrant issue in light of *United States v. Stanley*, 597 F.2d 866 (4th Cir. 1979), the Court will provide its analysis of *Stanley* and why that case does not compel suppression of any evidence here.

11

According to Defendant, *Stanley* "limit[s] the scope of search warrants for a residential address as a matter of law to a residence and its curtilage, the area associated with and within the general enclosure surrounding the home." (ECF No. 43 at 16.) However, the Court disagrees with that interpretation of *Stanley* and finds that *Stanley* is distinguishable.

In *Stanley*, officers obtained a search warrant for a mobile home. 597 F.2d at 868. During the search of the mobile home, officers additionally searched a resident's car, which was in a parking lot that was shared by the resident and his neighbors. *Id.* The defendant moved to suppress a shotgun found in the car, arguing that the car had not been within the curtilage of the mobile home and therefore had not been covered by the search warrant. *Id.* at 869–71. The Fourth Circuit explained that this argument implicated "[t]he 'common area' curtilage issue." *Id.* at 870. The court determined that "the common area parking lot . . . was not within the curtilage of [the] mobile home," and "[t]herefore, the federal search warrant for the mobile home did not, as a matter of law, include within its scope the parking lot and by extension the [car]." *Id.* In coming to this conclusion, the Fourth Circuit noted that the parking lot was used by neighbors, that no particular parking space was assigned to anyone, and that the space in which the car had been parked "was not annexed to [the] home or within the general enclosure surrounding [the] home." *Id.*

Notably, the Fourth Circuit did not announce any rule in *Stanley* concerning the legal significance of describing a place to be searched in a warrant using a street address. The scope of a warrant is based on its language, which should be assessed in a "commonsense and realistic fashion." *United States v. Srivastava*, 540 F.3d 277, 290 289–90 & n.16 (4th Cir. 2008) (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). The warrant in *Stanley* was for "the residence of Charles Stanley, 132 Starnes Cove Road, Asheville, N.C., being a Brown and

12

Cream House Trailer." 597 F.2d at 870. This description, as written, focuses on a particular structure that happens to be located on a certain tract of land; the most the Fourth Circuit said regarding what these words literally meant was that they "[did] not describe with particularity a Cadillac automobile parked outside on a common parking lot." *Id.* Here, in contrast, the warrant said that the "premise to be searched" was "4960 Cecil Norman Rd. Randleman, NC 27317," and an aerial photograph of the property was attached. (ECF No. 26-1 at 3, 10.) Applying common sense, this Court finds that this describes the entirety of Defendant's property at 4960 Cecil Norman Rd., Randleman, NC, 27317—including the woods. If the magistrate who issued the warrant in this case had wanted to confine the search to the Defendant's house and its curtilage, the magistrate could have used a formulation more like that in *Stanley*—something akin to, "the residence located at 4960 Cecil Norman Rd. Randleman, NC 27317." However, the warrant here only gives the address, and simply giving an address without any limitation is a reasonable way to describe a contiguous plot of rural land that is associated with that address.[3]

Accordingly, the situation here is unlike the situation in *Stanley*, where the warrant only described a certain mobile home and the only possible way to associate the unassigned parking space with the mobile home was via a curtilage argument. The Court stands by its prior conclusion that the officers' activities in the woods were carried out pursuant to the warrant.

       5.      <u>Defendant's Arguments About Whether His Containers of Drugs Were Personal Property Are Meritless</u>

Defendant also makes a series of arguments related to how officers handled the containers of drugs that they found in the woods around his residence. (ECF No. 43 at 11–

---

[3] While the warrant did also give a "description of residence," reading the warrant in context and based on where this description appears within the warrant, the Court finds that this "description of residence" was not intended to limit the search to only the residence at the address. (*Id.*)

13

15.) These arguments share a common premise: that the containers of drugs were "movable personal property" that constituted Defendant's "effects." (*Id.*) Defendant first argues that because the containers were "effects," officers could not open them without a warrant. (*Id.* at 11–13.) Defendant next argues that, again because the containers were "effects," the Court's prior analysis regarding these containers was erroneous to the extent it relied on case law addressing open fields and reasonable expectations of privacy in places (as opposed to things). (*Id.* at 13–14.) Finally, Defendant argues that since property cannot be seized without a warrant, and that because the containers were opaque and thus hid their contents from view the plain view seizure doctrine allowing seizure without a warrant did not apply here. (*Id.* at 14–15.)

These arguments are meritless because, as set out above, the warrant in this case allowed a search of Defendant's entire property (including the woods), and it also explicitly authorized seizure of "any and all . . . items related to the possession, sale, manufacturing, storage and transportation of controlled substances." (ECF No. 26-1 at 2.) Thus, the opaque containers obtained from the woods around Defendant's house with the aid of a drug sniffing dog were already subject to a warrant when they were seized.

The Court notes that at the motions hearing, Defendant specifically requested that the Court address whether *United States v. Jones*, 565 U.S. 400 (2012) alters its analysis regarding Defendants "effects" arguments. It does not.

In *Jones*, the government argued that officers did not need a warrant to affix a GPS tracking device to a car. 565 U.S. at 403 & n.1. The Supreme Court held that because the car was an "effect" under the Fourth Amendment, tampering with it was a search that required a warrant. *Id.* at 404. Defendant's view is that *Jones* supports his argument that (1) the containers

14

of drugs were "effects" in which he had a right of privacy; (2) the warrant here did not extend to the containers of drugs because they were found in an open field behind his house rather than in his house or its curtilage; (3) therefore when the officers could not open the containers of drugs without getting a second warrant specifically for the containers.

Assuming for the sake of analysis that the warrant in this case did not cover all of Defendant's woods and all drug-related objects located therein, Defendant's argument is still not persuasive because a person's car is a very different kind of item from the containers at issue here, which were, essentially, trash found in the open woods (not "effects" in which he had a right of privacy). As this Court said in its prior order, "Supreme Court doctrine squarely permits the search and seizure of stray, unlocked containers (like the coffee cans and pickle jars here) found in the undeveloped woods behind Newbold's house." (ECF No. 37 at 12 (citing *California v. Greenwood*, 486 U.S. 35 (1988)); *see also United States v. Walker*, 624 F. Supp. 99, 101 (D. Md. 1985) (grocery bag containing evidence had been "abandoned" such that it could be opened without a warrant because it was found "[by] a roadside in a sparsely populated rural setting" and "[a] person who would leave at such a location what had all the appearances of a bag of trash could hardly have retained a reasonable expectation of privacy with regard to the contents of the bag"; and also noting that "[g]arbage or trash is generally considered to be abandoned property"). Accordingly, *Jones* is inapposite.

    6. <u>Defendant's Presents No Authority that Officers May Not Use Drug-Detecting Dogs in Open Fields</u>

Defendant also argues that this Court erred in its application of the open fields doctrine in this case because, according to Defendant, that doctrine does not allow officers to use drug detection dogs in open fields. (ECF No. 9–10.) However, the primary case that Defendant relies on for this contention held the opposite—the court in that case concluded that

15

"[b]ecause a dog sniff is not a search in a public place, and because the intrusion on an open field has no Fourth Amendment significance, it must be the case that a dog sniff is not a search in an open field." *United States v. Beene*, 818 F.3d 157, 163 (5th Cir. 2016) (cited at ECF No. 43 at 10); *see also id.* ("We find no basis to hold that the Government must provide justification for the dog's presence under the open-fields doctrine."). Accordingly, the Court finds that Defendant has not presented any reason why this Court should disturb its prior ruling.

### 7. The Court Will Not Re-Analyze Whether Officers Could Dig Up Drugs from the Woods Near Defendant's Residence

Defendant also argues that this Court erred in its prior opinion by not addressing Defendant's argument "that digging up effects under rocks and dirt or inside hollow trees required a warrant," even if the digging occurred in an open field. (ECF No. 43 at 10–11.) Defendant's present contention amounts to another disagreement with the Court's analysis of the open fields doctrine under *California v. Greenwood*, 486 U.S. 35 (1988) as well as its reliance on *United States v. Ramapuran*, 632 F.2d 1149, 1156 (4th Cir. 1930), in its prior opinion. (*See* ECF No. 37 at 12–13.) The Court determined that these cases authorized "the search and seizure of stray, unlocked containers (like the coffee cans and pickle jars here) found in the undeveloped woods behind [Defendant's] house." (*Id.* at 12.) Because motions to reconsider are not meant to correct errors of reasoning, *Wiseman v. First Citizens Bank & Trust Co.*, 215 F.R.D. 507, 509 (W.D.N.C. 2003), this Court will not revisit its legal analysis on this issue.

### 8. The Court Already Addressed Whether Officers Could Take Defendant's Photograph

Defendant next argues that a photograph of himself retrieving buried drugs in the woods by his home should be suppressed because the officer who took the photograph was trespassing on Defendant's land at the time the picture was taken, thus rendering the photograph an unreasonable seizure of Defendant's person. (ECF No. 43 at 19–20.)

16

Defendant claims that the Court did not address or rule on this argument in its prior opinion. (*Id.* at 20.) However, the Court did already address this issue. (*See* ECF No. 37 at 10.) In its prior opinion, the Court first rejected Defendant's argument that it should analyze his contention under the Fifth Amendment, and then the Court stated its finding that "[t]he open fields surveillance by [the detective] and resulting photograph [are] squarely within the bounds of what is permitted by the Fourth Amendment." (*Id.*) The applicable standard of review does not require this Court to re-analyze this issue simply because Defendant disagrees with the Court's conclusion.

9. <u>Defendant Has Not Been Subjected to Manifest Injustice</u>

Defendant last argues that he was subjected to manifest injustice because this Court decided his prior motions without holding a hearing, despite having previously scheduled a hearing, and without allowing Defendant time to file a reply brief. (ECF No. 43 at 20–21.) Defendant also contends that the Court has treated him, a defendant proceeding *pro se*, with less solicitude than it would treat a defendant represented by counsel. (*Id.* at 21.)

This Court's Local Criminal Rules do not require it to hold a hearing on pretrial motions that can be decided on the briefs. *See* L. Cr. R. 12.1. Additionally, while this Court's Local Civil Rules permit a party to file a reply brief within fourteen days after service of a response brief, L.R. 7.3(h), this is not one of the Local Civil Rules incorporated into the Local Criminal Rules, L. Cr. R. 57.1, which are silent regarding whether parties are either entitled or permitted to file reply to briefs. Finally, the Court rejects the notion that it has evaluated Defendant's arguments more critically than if these same arguments had been made by an attorney. The arguments, regardless of who made them, were meritless and the Court did not require the assistance of a hearing to address them.

As with Defendant's motion to reconsider his motion for a *Franks* hearing, Defendant has not shown any manifest error of law or fact warranting reconsideration and merely asks the Court to rethink what it has already thought through. Accordingly, Defendant's motion for reconsideration with respect to his motion to suppress is also denied.

## II. MOTION TO DISMISS INDICTMENT (ECF NO. 48)

Defendant again moves to dismiss the Indictment, or in the alternative, merge Counts One, Two, Three, and Four, which he argues "all charge the same offense." (ECF No. 48 at 1.) Defendant cites *United States v. Bennafield*, 287 F.3d 320 (4th Cir. 2002), as his main support for this argument.

In *Bennafield*, the defendant was indicted on two counts: (1) possession with intent to distribute approximately 6.66 grams of cocaine base, and (2) possession with intent to distribute approximately 109.9 grams of cocaine base. 287 F.3d at 322. At trial, the jury was instructed on the offense of simple possession of a controlled substance, a lesser included offense of the crimes charged in the indictment. *Id.* The jury acquitted the defendant of the two counts of possession with the intent to distribute but convicted him of two counts of simple possession. *Id.* On appeal, defendant argued that these two convictions were unconstitutionally duplicative because his conduct amounted only to a single violation of 21 U.S.C. § 844(a). The Fourth Circuit ultimately held that "§ 844(a) does not unambiguously provide that simultaneous possession of multiple packages of cocaine base in close proximity to one another constitutes multiple crimes," *Bennafield*, 287 F.3d at 323, and that the defendant's "illegal conduct amounted only to a single violation of § 844(a)," *id.* at 325.

Notably, *Bennafield* does not address the issue of whether separate controlled substances may be charged as separate offenses. Here, Defendant is charged in a four-count Indictment,

18

charging him in Count One with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (possession with intent to distribute methamphetamine); in Count Two with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (possession with intent to distribute fentanyl); in Count Three with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (possession with intent to distribute cocaine hydrochloride); and in Count Four with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (possession with intent to distribute heroin). (ECF No. 1.) These counts all pertain to different controlled substances, unlike the duplicitous counts of possession with intent to distribute cocaine in *Bennafield*.

Defendant acknowledges that the Fourth Circuit in *United States v. Grandison*, 783 F.2d 1152 (4th Cir. 1986) answered the question of whether separate charges arising from one incident where different "drugs were discovered in the same room" are permissible. 783 F.2d at 1156. There, the Fourth Circuit held that "[b]ecause different penalties are provided for possession with intent to distribute drugs listed in different schedules, we hold that Congress intended the possession of each scheduled substance to be a separate offense and to permit trial courts to impose separate sentences for each offense." *Id.* Defendant argues that *Grandison* is no longer good law because "Schedule I and II controlled substances receive the same default penalty under 21 U.S.C. § 841(b)(1)(C)." (ECF No. 48 at 3.) However, the Court disagrees, and notes that *Grandison*'s logic remains unaffected. The various substances in Defendant's Indictment here remain separately listed in different schedules, evincing Congress' intent that the possession of each substance be a separate offense and permit separate sentences for each offense.[4]

---

[4] Defendant also notes that Count Four in the Indictment mistakenly lists heroin as a Schedule II controlled substance, when it is a Schedule I controlled substance. (ECF No. 48 at 5.) However, Defendant does not point the Court to any case law suggesting this minor error renders the Indictment fatally defective, thus the Court will not dismiss this count at this time.

19

Defendant's motion to dismiss or merge the Indictment is thus denied.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's motion for reconsideration of his motion for a *Franks* Hearing, (ECF No. 41), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion for reconsideration of the Court's order denying his motion to suppress evidence obtained as a result of the search warrant at 4960 Cecil Norman Road, (ECF No. 43), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss or merge multiplicitous counts and to dismiss Count Four of the Indictment, (ECF No. 48), is **DENIED**.

**IT IS FURTHER ORDERED** that, there being no just reason for delay and that moving forward would not prejudice the Defendant, Defendant's motion to continue his trial to the June 2023 term, (ECF No. 50), is **DENIED**.

This, the 5th day of May 2023.

/s/ Loretta C. Biggs
United States District Judge