# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22-CR-372-1 |
| | ) | |
| JOSEPH KENNETH NEWBOLD, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Before the Court are: Defendant's *Pro Se* Motion for a New Trial, (ECF No. 80); "Defendant's Amended Motion to Bar Imposition of Multiple Punishments for Single Offense by Merger of Counts 1-4 into a Single Sentence," (ECF No. 109); and "Defendant's Amended Motion to Prohibit Imposition of Sentences under Unconstitutionally Vague Provision of 21 U.S.C. § 841(b)(1) (A &B) which as Applied to Defendant Violate Due Process Rights," (ECF No. 111). The Government has responded to each of the motions, (ECF Nos. 87, 116). The Defendant also filed a reply to the motion for a new trial, (ECF No. 88.)

The Court, having considered the arguments of the parties as set forth below, finds that Defendant's motions lack merit, and the motions will be denied.

## I. BACKGROUND

In April and May of 2022, Defendant Joseph Kenneth Newbold sold drugs to a Confidential Reliable Source ("CRS") in controlled buys. (ECF No. 100, ¶¶ 3-6.) The police

subsequently obtained a search warrant for Defendant's residence, vehicle, and property. (*Id.*, ¶ 7.) On May 10, 2022, when Defendant was stopped and searched, the police found 2.27 grams of methamphetamine. (*Id.*) Defendant was returned to his property, and the police executed the search warrant. (*Id.*, ¶ 8.) In the house the police found digital scales, ammunition, plastic baggies, and two black powder pistols. (*Id.*) While searching the property the police located containers of drugs among the trees, and in mounds of dirt. (*Id.*, ¶ 9.) The police seized 1,500 grams of methamphetamine, 49.68 grams of fentanyl, 166.88 grams of cocaine hydrochloride, and 8.48 grams of heroin. (*Id.*)

On May 18, 2023, Defendant was convicted by a jury of one count of possession with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); one count of possession with intent to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); one count of possession with intent to distribute cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and, one count of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (ECF No. 73 at 1-3; ECF No. 112 at 1.) Defendant was sentenced to 168 months of imprisonment on each count, the sentences to run concurrently. (ECF No. 112 at 2.)

## II. DISCUSSION

### A. Motion for a New Trial

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "A new trial is warranted only "[w]hen the evidence weighs so heavily against the verdict that it would be unjust to enter judgment."' *United States v. Millender*, 970 F.3d 523, 531-32 (4th Cir.

2020) (quoting *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985)). Defendant asserts three grounds in support of his motion for a new trial. First, Defendant argues that the affidavit supporting the application for the search warrant contained false representations and material omissions. (ECF No. 80 at 9.) Second, Defendant argues that photographic evidence showing him removing drugs from the wooded area around his house was obtained without a warrant in violation of his Fourth Amendment rights. (*Id.* at 20-21.) Third, Defendant argues that the Government failed to disclose favorable evidence that undermines the reliability of the confidential informant in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (*Id.* at 24.)

1.   Affidavit was False and Misleading

Defendant argues that the affidavit supporting the application for a search warrant contained "false representations and misleading omissions."[1]  (ECF No. 80 at 1.)  Defendant contends that Detective Linthicum made four false statements in his affidavit:

> 1. Linthicum utilized the CRS to purchase meth from Joesph Kenneth Newbold at 4960 Cecil Norman Road.  2. The CRS left the brief location and traveled directly to 4960 Cecil Norman Road; and 3. The CRS left 4960 Cecil Norman Road and traveled directly to the debrief location; an additional statement was made only about the May 2 buy; 4. Detectives observed Newbold arrive at the residence driving the silver in color Kia Soul."

(*Id.* at 11.)  Defendant asserts that without those statements the affidavit does not establish probable cause to search 4960 Cecil Norman Road.[2]  (*Id.* at 11, 13.)  Defendant contends that

---

[1]  A copy of the affidavit filed in support of the search warrant may be found in the record at ECF No. 80-1.

[2]  Probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found."  *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

the Court should void the warrant or hold a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to allow him to challenge the search warrant. (*Id.* at 9.)

In *Franks*, "the Supreme Court carved out a narrow exception to the general rule prohibiting a defendant from attacking a facially valid affidavit." *United States v. White*, 850 F.3d 667, 672-73 (4th Cir. 2017). To obtain a *Franks* hearing, a defendant must make 'a substantial preliminary showing' that the affiant made (1) a false statement (2) 'knowingly and intentionally, or with reckless disregard for the truth' that was (3) 'necessary to the finding of probable cause.'" *Id.* (quoting *Franks*, 438 U.S. at 155-56). "[T]he defendant cannot rely on a purely subjective disagreement with how the affidavit characterizes the facts. Rather, there must be evidence showing that the statements at issue are objectively false." *United States v. Moody*, 931 F.3d 366, 370 (4th Cir. 2019).

Defendant raised these arguments in pre-trial motions attacking as false the same four statements in the affidavit. (ECF Nos. 19, 41.) The motions were denied by the Court. (ECF Nos. 37, 60.) The Court disagreed with Defendant's characterization of the evidence, and concluded Defendant failed to show "the affidavit contained any false or misleading statement." *United States v. Newbold*, Case No. 1:22CR372-1, 2023 WL 2599867, at *4 (M.D.N.C. Mar. 22, 2023).

Defendant argues there is new evidence from Det. Linthicum's trial testimony that shows a discrepancy between what was represented in the affidavit and what the detectives could observe. (ECF No. 80 at 12.) The first three statements which Defendant's contends are false all involve the idea that the police could place the drug transaction or the movements of the CRS with Defendant or precisely at Defendant's address of 4960 Cecil Norman Road.

4

Defendant asserts that Det. Linthicum's trial testimony shows that, given the nature of Defendant's property and the location of the detectives conducting surveillance, no officer could see the CRS or Defendant arrive at the house and could not be sure the CRS did not stop somewhere else along the road. Defendant argues that the statements in the affidavit that the CRS purchased methamphetamines "from Joesph Kenneth Newbold at 4960 Cecil Norman Road," (ECF 109 at 11), and that the CRS traveled "directly" to and from 4960 Cecil Norman Road from the debrief spot are "manufactured falsehoods." (*Id.* at 13.) Defendant also asserts that Det. Linthicum presented false information when he stated, "Detective observed Newbold arrive at the residence driving the silver in color Kia Soul." (*Id.* at 11.)

The Court again disagrees with Defendant's characterization of the evidence. In making his argument Defendant selectively presents statements without providing the full scope of what was known to Det. Linthicum. The statements in the affidavit indicating that the CRS purchased drugs from Defendant at his house during the controlled buys are well supported. Det. Linthicum properly relied on the combined evidence from several detectives who were using visual and audio surveillance, as well as information from the CRS.[3] As was established at trial, the CRS was being observed by detectives from different vantage points. Det. Linthicum indicated that during at least one controlled buy he followed the CRS for some distance from the debrief point and observed the CRS turning onto Cecil Norman Road. (ECF No. 85 at 41.) Det. Sakamura testified that from his position in the woods he could see both

---

[3] "It is well settled that probable cause may be founded upon hearsay and information received from informants." *United States v. DeQuasie*, 373 F.3d 509, 518 (4th Cir. 2004) (citing *Franks*, 438 U.S. 154, 165 (1978).)

Defendant's house and cars parked there. (ECF No. 85 at 107.) He testified that he saw the CRS walking towards Defendant's house and later leaving the residence. (*Id.* at 110-111.) The police also utilized live audio surveillance which corroborated information from the CRS about where and from whom she bought the drugs. (ECF No.84 at 46-47, 49-50; ECF No. 85 at 50-51.)

Defendant challenges as false the statement that he was seen arriving at his home driving his Kia. However, Det. Sakamura testified on cross that he could see Defendant's driveway and "[a] silver Kia Soul." (ECF No. 85 at 107-08.) While Det. Sakamura indicates he did not see Defendant "entering or exiting the house," (*id.* at 111), Det. Sakamura was not specifically asked if he saw the Kia arrive at the house. Moreover, even if the statements in the affidavit refer to Defendant driving onto his street, a secluded property with only one other home, as opposed to arriving at his house, Defendant has not shown the type of a material falsehood required by *Franks*.[4] "Mere imprecision does not, by itself, show falsity." *Moody*, 931 F.3d at 372. An inaccuracy that is "innocent or even negligent" will not meet the high standard required to warrant a hearing. *Id.* at 371. Defendant has at best shown ambiguous or imprecise language and fails to show an intentional falsity.

Defendant also fails to show that Det. Linthicum made material omissions in the affidavit. The affidavit indicated Det. Linthicum found the CRS to be reliable because she provided information that law enforcement corroborated and found to be truthful and previously made successful controlled drug buys for the police. (ECF No. 80-1 at 8.)

---

[4] There is only one other house other than Defendant's on Cecil Norman Road. (ECF No. 84 at 40.)

Defendant argues that Det. Linthicum omitted information that the CRS came to be working with the police after being arrested, that some of her charges were dismissed in exchange for the controlled buys, and that she was a heroin addict not to be trusted. (ECF No. 80 at 17-18.) It is well established that "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990). *Franks* protects against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*, the magistrate." *Id.* at 301 (emphasis in original). Defendant fails to show, and there is no indication in the record, that Det. Linthicum omitted any information about the CRS with an intent to mislead the court.

Lastly, Defendant alleges that Det. Linthicum failed to include information in the affidavit that the CRS stole $100. Defendant says the drugs cost $1800 but the photographs of the buy money show $1900. Defendant contends that because no money was returned to Det. Linthicum the pictures prove the CRS stole $100. (ECF No. 80 at 6.) However, there is no indication that when Det. Linthicum prepared the affidavit, he was aware of potentially missing money. Det. Linthicum's testimony indicated he did not know there was a discrepancy in the amount of money, and he searched the CRS when she returned from the buy and did not find any cash or contraband on her. (ECF No. 85 at 30-31, 38-39.) While it is possible the search may have missed the $100 it is equally likely the CRS gave Defendant all the money she

7

was given.[5]  In either case, there is no indication that Det. Linthicum believed the CRS may have taken money and intentionally omitted the fact from the affidavit.[6]

Accordingly, Defendant is unable to show he is entitled to a *Franks* hearing or a new trial based on any of his attacks on the information in the affidavit.

2.    Evidence Obtained by Warrantless Intrusion

Defendant next argues he should be granted a new trial because a photograph of him retrieving drugs in the woods was improperly admitted at trial.  (ECF No. 80 at 21.)  He argues that the officer who took the photograph, Det. Sakamura, was conducting surveillance within Defendant's residential area without a proper warrant in violation of Defendant's Fourth Amendment rights.  Defendant argues that the testimony at trial indicates the detective was closer to the house than previously described.

The area within the curtilage of a home is protected under the Fourth Amendment.  *See United States v. Dunn*, 480 U.S. 294, 300 (1987).  However, uninhabited private property outside of the curtilage is not afforded the same protections.  *See Hester v. United States*, 265 U.S. 57 (1924); *United States v. Vankesteren*, 553 F.3d 286, 291 (4th Cir. 2009).  A person has "no

---

[5]  The only information to the contrary is Defendant's self-serving account that he saw the CRS steal money.  (ECF No. 80-2 at 1.)

[6]  Defendant relies on *United States v. Lull*, 824 F.3d 109 (4th Cir. 2016), in arguing this claim.  However, there are significant factual differences between Defendant's case and *Lull* that distinguish the cases. The police searched the defendant in *Lull* after a controlled buy and discovered he had stolen money. *Id.* at 112.  The police determined the informant was not reliable and terminated his status.  *Id.*  The informant was later arrested for a felony, but the investigator nonetheless relied on information from the informant to get a search warrant.  The investigator later testified he intentionally omitted the information about the informant's terminated status and unfavorable actions from the warrant application.  *Id.* at 112-13, 116.

legitimate expectation that open fields will remain free from warrantless intrusion by government officers." *Oliver v. United States*, 466 U.S. 170, 181 (1984).

Defendant moved to exclude the photograph from evidence in pre-trial motions, (ECF Nos. 20, 43), and the motions were denied by the Court. (ECF Nos. 37 and 60). At that time Defendant agreed that Dets. Sakamura and Chrisco were outside the curtilage of his house. (ECF No. 20 at 2-3.) Defendant stated that the detectives "hid in woods on Newbold's property 50 to 75 yard behind his home, an area outside of the curtilage and out of sight of the home." (*Id.*) The Court ruled that the "[t]he open field surveillance by Det. Sakamura and resulting photograph is squarely within the bounds of what is permitted by the Fourth Amendment." *Newbold*, 2023 WL 2599867, *5.

In his current motion, however, Defendant argues that Det. Sakamura was in closer proximity to the residence than Defendant believed prior to trial. (ECF No. 80 at 22-23.) Defendant contends that Det. Sakamura was stationed near the dog lot, an area Defendant goes to multiple times a day, and therefore, within the curtilage of his home. (*Id.*) Although the area defined as a curtilage must be considered on a case-by-case basis, the Supreme Court has described curtilage as "the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" *Oliver*, 466 U.S. at 180 (quoting *Boyd v. United States*, 116 U.S. 616 (1886).) The Supreme Court has held that the central consideration is whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *United States v. Dunn*, 480 U.S. 294, 301 (1987). To aid in making this determination the Supreme Court set forth the following factors to consider: (1) the proximity of the area to the home; (2) whether the area is within an

enclosed area around the home; (3) how the area is used; and (4) what steps were taken to protect the area. *Id.*

The evidence clearly demonstrates that the photograph was taken from outside of the curtilage of Defendant's home. First, the testimony shows Det. Sakamura was remote from the house. Det. Sakamura described that he was in the woods approximately 40 to 50 to 75 yards from Defendant's house and beyond the dog lot. (ECF No. 85 at 107, 101.) Second, it is undisputed that Det. Sakamura was not within any enclosure on the property, but in an open area of woods. Third, the woods were not an area groomed or developed for the "intimate activities of the home." *Dunn*, 480 U.S. at 301. Finally, Defendant made no effort to enclose the area or shield it from public view. There was no fence or other impediment, and while the property is secluded, the woods were freely accessible by parking on a nearby road and walking from the south side of the property. (*Id.* at 108.) Moreover, as noted above, in an earlier motion Defendant conceded the detectives hiding in the woods were in "an area outside of the curtilage and out of sight of the home." (ECF No. 20 at 2-3.)

Accordingly, as the Court previously determined, the photograph was properly admissible as evidence under the open-field exception. Defendant is unable to show he is entitled to a new trial on this basis.

### 3. *Brady* Evidence

In his final ground for a new trial, Defendant argues that evidence was withheld by the Government in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Defendant contends that investigative reports from the Sheriff's Office were improperly withheld until May 4, 2023. Defendant argues that information in the reports would have helped him challenge the

credibility of the confidential informant and thereby, establish his right to a *Franks* hearing. He argues that the reports "show the CRS stole buy money and had a deal to obtain dismissal of felonies in exchange for controlled buys, facts not included in his *Franks* motion." (ECF No. 80 at 24.)

Defendant is unable to demonstrate he is entitled to relief on this ground. *Brady* requires prosecutors to produce evidence "favorable to an accused where evidence is material." 373 U.S. at 87. The Fourth Circuit has held that there is no due process violation "as long as *Brady* material is disclosed to a defendant in time for its effective use at trial." *United States v. Smith Grading and Paving, Inc.*, 760 F.2d 527, 532 (4th Cir 1995). Defendant concedes that the information was turned over to the defense on May 4, 2023, which was more than 10 days before the start of trial. (ECF No. 80 at 24.) Consequently, Defendant cannot show a *Brady* violation.

Nor would the information in the report have had the impact Defendant suggests. As the Government indicates, at the time Defendant filed his motion for a *Franks* hearing in February 2023, he already knew that the CRS had been arrested and received legal consideration for her cooperation with the police. (*See* ECF No. 19 at 6-7.) And as discussed above, Defendant is incorrect that the pictures of the money prove the CRS stole $100. Consequently, Defendant cannot establish the Government improperly withheld material exculpatory evidence in violation of Defendant's due process rights.

Accordingly, all the grounds offered by Defendant in support of his motion for new trial lack merit and his motion will be denied.

11

**B.    Amended Motion to Bar Imposition of Multiple Punishments**

In "Defendant's Amended Motion to Bar Imposition of Multiple Punishments for Single Offense By Merger of Counts 1-4 into a Single Sentence," Defendant moves the Court to "merge his four convictions for possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a) by imposing a single sentence for Count One as prescribed by 21 U.S.C. § 841(b)(1)(A) and dismissing Counts Two, Three and Four." (ECF No. 109 at 1.) In support Defendant argues that because the drugs were all found during the search of his property on May 10, 2022, he should have been charged with a single violation, and the charges are multiplicitous.[7]

Multiplicity is charging "a single offense in several counts" with the danger that a defendant receives multiple punishments for the same offense in violation of the Double Jeopardy Clause. *United States v. Goodine*, 400 F.3d 202, 207 (4th Cir. 2005). Defendant previously argued his four charges were multiplicitous in a pretrial motion to dismiss the indictment or merge the charges. (*See* ECF No. 48 at 1.) In denying his motion, the Court relied on the Fourth Circuit's ruling in *United States v. Grandison*, 783 F.2d 1152 (4th Cir. 1986). *See United States v. Newbold*, Case No. 1:22CR372-1, 2023 WL 328788, * 9 (M.D.N.C. May 5, 2023). In *Grandison*, the defendant was charged with two counts of unlawful possession, one for possessing heroin which was a Schedule I drug and one for possessing cocaine, a Schedule II drug. 783 F. 2d at 1156. The Fourth Circuit held that "[b]ecause different penalties are

---

[7]  Defendant recognizes that if he succeeds on this argument, it will not impact the length of his imprisonment but argues that a single sentence will impose a single $100 assessment as opposed to the four $100 assessments of his present sentence. (ECF No. 109 at 9.) He contends that this distinction means that "only dismissal of Counts 2-4 will prevent a sentence violating the Double Jeopardy Clause." *Id.*

Case 1:22-cr-00372-LCB    Document 122    Filed 09/17/25    Page 12 of 16

provided for possession with intent to distribute drugs listed in different schedules, we hold that Congress intended the possession of each scheduled substance to be a separate offense and to permit trial courts to impose separate sentences for each offense." *Id.* Relying on that reasoning, this Court held that "[t]he various substances in Defendant's indictment here remain separately listed in different schedules, evincing Congress' intent that the possession of each substance be a separate offense and permit separate sentences for each offense." *United State v. Newbold*, Case No. 1:22CR372-1, 2023 WL 328788, *9 (M.D.N.C. May 5, 2023).

Defendant disagrees with the Court that *Grandison* controls his case. He argues that because the drugs in his case are in the same drug schedule and receive the same default penalty, the substances can only sustain one count.[8] (ECF No. 109 at 2.) However, the fact that substances fall within the same drug schedule does not preclude separate charges. *See*, *e.g.*, *Brooks v. United States*, Civ. Action No. 3:07CV170, Crim. Action No. 3:04CR40, 2009 WL 3584001, *4 (N.D. W.Va. Oct. 28, 2009) (rejecting the defendant's argument that Congress intended simultaneous possession of multiple drugs to constitute multiple offenses only if drugs on different schedules); *see also United States v. Guess*, 482 Fed. Appx. 832, 837 (4th Cir. 2012) (unpublished) (recognizing when police found methamphetamine, diazepam pills, amphetamine pills and oxycodone in defendant's pickup Government could charge each type of drug in a separate count.) As the Government contends, the penalty provisions of 21 U.S.C. § 841 differentiate between the amount and type of different controlled substances. (ECF No. 116 at 3.) The Court finds that these penalty provisions, like the drug schedules relied on in

---

[8] As instructed at Defendant's trial, the substances for which Defendant was charged in Counts One through Three are Schedule II substances, and the heroin for which he was charged in Count Four is a Schedule I substance. (ECF No. 117 at 76-84.)

*Grandison*, indicate that Congress intended to treat different substances as separate offenses. Consequently, the Court again finds that the law allows the possession of each substance to be charged and sentenced as a separate offense. Defendant's motion seeking to merge the convictions for sentencing will be denied.

### C. Amended Motion re Unconstitutionally Vague Statute

Lastly, the Court considers "Defendant's Amended Motion to Prohibit Imposition of Sentences under Unconstitutionally Vague Provision of 21 U.S.C. § 841(b)(1) (A &B) which as Applied to Defendant Violate Due Process Rights." (ECF No. 111.) Defendant argues that the Court should prohibit his sentences on Counts One and Two because as applied in his case § 841 is void for vagueness and violates the Due Process Clause. (*Id.* at 1.) Defendant contends § 841 is vague because it allowed his penalties to be increased without the jury ever finding he knew he possessed "the specific types and quantities of drugs that increased his statutory minimum and maximum sentences for Counts One and Two." (*Id.* at 2.) Count One charged Defendant with knowingly and intentionally possessing with intent to distribute 500 grams or more of a substance containing methamphetamines. (*Id.*) Defendant argues the Government should have had to prove that he knew he possessed 500 grams or more. (*Id.*) Count Two charged Defendant with knowingly and intentionally possessing with intent to distribute 40 grams or more of a mixture containing fentanyl. (*Id.*) Defendant argues that the Government should have had to prove that Defendant knew the substance "was 40 grams or more of a mixture containing fentanyl." (*Id.* at 2.)

There is no requirement under § 841 for the Government to prove a defendant knew the specific amount or exact nature of a drug to support a conviction or an enhanced sentence.

14

*See United States v. Brower*, 336 F.3d 274, 277 (4th Cir. 2003).[9]  The Government only needs to prove a defendant knew he possessed a controlled substance.  *Id.* at 277; *see also United States v. Ali*, 735 F. 3d 176, 186 (4th Cir. 2013).  To impose an enhanced penalty the Government must only prove the drug offense involved the amount alleged, not that defendant knew he had the specific amount.  *Brower*, 336 F.3d at 277.

Defendant argues that the Supreme Court's decisions in *Rehaif v. United States*, 588 U.S. 225 (2019), and *Ruan v. United States*, 597 U.S. 450 (2022), require the Government to prove that he knowingly possessed the specific types and amounts of drugs.  (ECF No. 111 at 3.)  However, neither of the cases support Defendant's position.  In *Ruan*, in examining how the men rea requirement applied to the "except as authorized" language in § 841, the Court recognized that "section 841 has a general scienter provision."  597 U.S. at 458.  Nothing in *Ruan* imposes an additional or higher burden of proof with respect to the amount or type of the controlled substance.  *Rehaif*, specifically addressed the burden of proof in cases brought under 18 U.S.C. § 924(a)(2), involving the knowing possession of a firearm by a felon, and does not extend to § 841.  Consequently, Defendant's motion to prohibit punishment under what he deems an unconstitutionally vague statute will be denied.

---

[9]  In *Brower*, the defendant asserted that *Apprendi v. New Jeresey*, 530 U.S. 466 (2000) required the Government to prove a defendant knew he was distributing the specific substance charge in the indictment.  The Fourth Circuit rejected the argument that the holding in *Apprendi*, required this higher showing of mens rea.  *Brower*, 336 F. 3d at 276-77.

Accordingly, for the reasons stated herein, the Court enters the following:

**ORDER**

**IT IS THEREFORE ORDERED** that Defendant's *Pro Se* Motion for a New Trial, (ECF No. 80); "Defendant's Amended Motion to Bar Imposition of Multiple Punishments for Single Offense By Merger of Counts 1-4 into a Single Sentence", (ECF No. 109); and, "Defendant's Amended Motion to Prohibit Imposition of Sentences under Unconstitutionally Vague Provision of 21 U.S.C. § 841(b)(1)(A &B)", (ECF No. 111), are each **DENIED**.

This, the 17th day of September 2025.


/s/ Loretta C. Biggs
Senior United States District Judge